No. 26-1362

# In the United States Court of Appeals
## for the
# Third Circuit

Solomon A. Jones,

*Plaintiff-Appellant,*

v.

Educational Testing Service,

*Defendant-Appellee.*

### On Direct Appeal

*District of New Jersey*
*Case No. 3:23-cv-20326-MAS-RLS*

## PRINCIPAL BRIEF OF
## APPELLANT

Solomon A. Jones
Pro Se
Phone: (229) 234-9383
soljones360@gmail.com

April 1, 2026

# <u>PRINCIPAL BRIEF OF APPELLANT</u>

Comes Now, *pro se* Plaintiff-Appellant – Solomon A. Jones ("Jones"), and hereby appeals to the Court of Appeals for the Third Circuit ("Third Circuit") taken from an *Order* issued by the District of New Jersey ("District Court") on February 3, 2026, dismissing Jones' *Complaint*.  The Appellee-Defendant, Educational Testing Service ("ETS") is represented by their counsel, Vincent N. Avallone and Scott G. Kobil.  The nature of this case is an employment discrimination and retaliation case.

Jones presents this case to the Third Circuit, not only with the seriousness of his claims of employment discrimination and retaliation by ETS, but also with the concern of public importance.  He details these claims in his original *Complaint* and through his subsequent amended complaints.  As the District Court continued to erroneously dismiss Jones' complaints, under an improper pleading standard but with permission to amend, Jones' subsequent amendments stay consistent with his original claims and ultimately make his case providently stronger.  Jones' *Second Amended Complaint* ("Operative Complaint") shows more than the threshold requirement of an inference of discrimination; it shows intentional and deliberate discrimination and retaliation by the Appellee, ETS.

Lastly, Jones' *Notice of Constitutional Challenge* supports his contention of concern for public importance.

**i**

# TABLE OF CONTENTS

RELATED CASES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .v

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .vi – xi

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . .1 – 2

QUESTIONS PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..3

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4 – 5

STATEMENT OF THE CASE/FACTS. . . . . . . . . . . . . . . . . . . . . . . . . .5 – 8

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . 8 – 10

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 – 48

    I.    THE DISTRICT COURT ERRED IN DISMISSING JONES' SECTION 1981 CLAIM FOR PLEADING INSUFFICIENCY. . . . . . . . . . . ..11 – 21

        A. Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ....11

        B. The District Court Twice Erroneously Held Jones' Section 1981 Claim to an Evidentiary Standard at Pleading Stage. . . . . . . 11 – 17

            1.  Jones' Employee Table of Similarly Situated Employees Shows Intentional Discrimination. . . . . . . . . . . . . . . . . . . . . . . . . .14 – 16

            2.  U.S. Supreme Court Case *Muldrow v. City of St. Louis* (2024) Standard of "Some Harm" Applies to Section 1981 Claims16 – 17

        C. The District Court Erred in Determining Jones' Section 1981 Claim Did Not Allege Retaliation. . . . . . . . . . . . . . . . . . . . . . . . . . .17 – 18

        D. "But-For" Cause of Discrimination. . . . . . . . . . . . . . . . . . . . . . 19 – 21

## TABLE OF CONTENTS (CONT.)

II. THE DISTRICT COURT ERRED IN DISMISSING JONES' TITLE VI CLAIM BY FAILING TO TAKE JUDICIAL NOTICE OF PUBLIC RECORDS INTEGRAL TO COMPLAINT. . . . . . . . . . . . . . . . . . .21 – 27

    A. Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . ...21 – 22

    B. Title VI's Statutory Text & Title VI's Judicial Interpretation 23 – 24

    C. Jones' *Notice of Judicial Review*. . . . . . . . . . . . . . . . . . . . 24 – 26

    D. Jones' Title VI Claim Meets Pleading Requirements. . . . . . .26 – 27

III. THE DISTRICT COURT ERRED IN DETERMINING JONES' FLSA, NJ-CEPA, & NJ-LAD CLAIMS DID NOT ALLEGE PROTECTED ACTIVITIES & RETALIATION. . . . . . . . . . . . . . . . . . . . . . . . . . ...28 – 40

    A. Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...28

    B. Jones' FLSA Claim Meets Pleading Requirements. . . . . . . . 29 – 33

        1. Jones' Email Complaints to Director Constitute Protected Activities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30 – 31

        2. Director's Inconsistent & Contradictory Responses Show Possible Pretext for Discrimination. . . . . . . . . . . . . . . . . .31 – 32

        3. Retaliation: ETS' Deviation from Standard Terminating Practices & Director's Responses Show Causal Connection Between Protected Activities & Subsequent Termination.32 – 33

# TABLE OF CONTENTS (CONT.)

C. Jones' NJ-CEPA & NJ-LAD Claims Meet Pleading Requirements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33 – 39

IV.    ETS' Remaining Arguments Are Unresolved On Merits. . . . . . . .39 – 40

V.    THE DISTRICT COURT ERRED BY FAILING TO CONSIDER MITIGATING CIRCUMSTANCES THAT COULD GIVE RISE TO TOLLING THE TIME TO FILE A CHARGE FOR JONES' TITLE VII, ADEA, & ADA CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40 – 42

VI.    THE DISTRICT COURT FAILED TO RECOGNIZE THE PUBLIC IMPORTANCE OF JONES' 18 U.S.C. § 3006A et seq. CLAIM. . 42 – 48

A.  Unconstitutionality of 18 U.S.C. § 3006A et seq.... . . . . . . . . . . . . . . .43

B.  Standing Exception: Third-Party Standing (*Jus Tertii*) . . . . ..43 – 48

C.  Solution to Conflict of Interest of 18 U.S.C. § 3006A et seq . . . . . ..48

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...49

Appendix Listing (Volume I)

Certificate of Compliance

Certificate of Service

# RELATED CASES

***Are there any related cases pending or decided in this or any other court?***

Yes.  There is one "related" case that has been decided.

*Solomon A. Jones v. Georgia Department of Labor and Educational Testing Service,*

   No. 2023CV377488, Superior Court of Fulton County State of Georgia. Judgment(s): Nov. 9, 2023.

This particular case is "related" in the sense that it involves the Defendant-Appellee, Educational Testing Service ("ETS"), and it arises from the same time period.  It is "not related" in the legal sense in which the case needs to arise from the same set of circumstances and claims.  The "related" case was a state civil case in which Jones sued both the Georgia Department of Labor ("GDOL") and ETS for denial of unemployment benefits.  To the extent ETS was involved was under newly introduced COVID-19 laws, employers were required to notify employees of reduced hours, and they were also responsible for initiating partial unemployment benefits to supplement those reduced hours.  ETS did not attempt to fulfill either of these obligations.  Subsequently, Jones sued ETS in conjunction with GDOL for denial of unemployment benefits in Georgia State Court.  The case was moved against Jones' desire to Georgia Superior Court.  The lawsuit ended with the Superior Court granting GDOL's and ETS' *Motions to Dismiss* on separate grounds.  GDOL was granted dismissal on the grounds of sovereign immunity.  ETS was granted dismissal on the grounds that Jones failed to exhaust all of his administrative remedies.  The Georgia Court of Appeals affirmed in part as it pertained to ETS and dismissed in part as it pertained to GDOL for lack of jurisdiction.

# TABLE OF AUTHORITIES

**Cases:**                                                          **Page(s)**

*Abbamont v. Piscataway Twp. Board of Educ.,*
    138 N.J. 405 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

*Addison v. Amazon.com, Inc.,*
    No. 22-01071, 2022 WL 2816946, at *4 n.7 (D.N.J. July 19, 2022) . . . . . . . ...13

*Alcantara v. Aerotek, Inc.,*
    765 F. App'x 692 (3d Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...12

*Anderson v. Wachovia Mortgage. Corp.,*
    621 F.3d 261 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...5, 13, 22, 28

*Barrows v. Jackson,*
    346 U.S. 249 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...44, 45, 48

*Battaglia v. United Parcel Service, Inc.,*
    214 N.J. 518 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...4, 13, 28

*Bostock v. Clayton County, Ga.,*
    590 U.S. 644 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...20

*Bowles v. City of Camden,*
    993 F. Supp. 255 (D.N.J. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Boyer-Liberto v. Fontainebleau Corp.,*
    786 F.3d 264 (4th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...16

*CBOCS West, Inc. v. Humphries,*
    553 U.S. 442 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...17

*Chowdhury v. Reading Hospital and Medical Center,*
    677 F.2d 317 (3d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22, 24

# TABLE OF AUTHORITIES (CONT.)

**Cases:**                                                                                    **Page(s)**

*Comcast v. National Association of African-American-Owned Media,*
 589 U.S. 327 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 19

*Conley v. Gibson,*
 355 U.S. (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Connelly v. Lane Construction Corp.,*
 809 F.3d 780 (3d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Dzwonar v. McDevitt,*
 177 N.J. 451 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 36

*Estate of Roach v. Trw, Inc.,*
 164 N.J. 598 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Feng v. University of Delaware,*
 785 F. App'x 53 (3d Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...26, 27

*Figueroa v. City of Camden,*
 580 F. Supp. 2d 390 (D.N.J. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Fowler v. UPMC Shadyside,*
 578 F.3d 203 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 13, 21

*Fuentes v. Perskie,*
 32 F.3d 759 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31, 37

*Gideon v. Wainwright,*
 372 U.S. 335 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...44

*Gil v. Related Mgmt Co.,*
 No. 06-2174 (WHW), 2006 WL 2358574, (D.N.J. Aug. 14, 2006) . . . . . . . . . . 22

*Gross v. FBL Financial Services, Inc.,*
 557 U.S. 167 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...19

*Hankins v. Temple University (Health Sciences Center),*
 829 F.2d 437 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

# TABLE OF AUTHORITIES (CONT.)

**Cases:**                                                                     **Page(s)**

*Hazen Paper Co. v. Biggins,*
        507 U.S. 604 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...11

*Heck v. Humphrey,*
        512 U.S. 477 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...44

*Jackson v. Birmingham Bd. Of Ed.,*
        544 U.S. 167 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...17

*Jones v. R. R. Donnelley & Sons Co.,*
        541 U.S. 369 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...18

*Kasten v. Saint-Gobain Performance Plastics Corp.,*
        563 U.S. 1 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...28

*Keys v. Humana, Inc.,*
        684 F.3d 605 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...13

*Kowalski v. Tesmer,*
        543 U.S. 125 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...44

*Lehmann v. Toys 'R' Us, Inc.,*
        132 N.J. 587 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Manning v. Temple University,*
        157 F. App'x 509 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . ...28

*McDonnell Douglas Corp. v. Green,*
        411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . ...11, 12, 13, 14, 27, 36

*Muldrow v. City of St. Louis,*
        601 U.S. 346 (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...3, 16

*N.A.A.C.P. v. Medical Center, Inc.,*
        657 F.2d 1322 (3d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Patterson v. McLean Credit Union,*
        491 U. S. 164 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ....17, 18, 27

## TABLE OF AUTHORITIES (CONT.)

**Cases:**                                             **Page(s)**

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Pivirotto v. Innovative Sys., Inc.*,
191 F.3d 344 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

*Powers v. Ohio*,
499 U.S. 400 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...44, 46, 48

*Price Waterhouse v. Hopkins*,
490 U.S. 228 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...19, 20

*Ranke v. Sanofi-Synthelabo Inc.*,
436 F.3d 197 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Runyon v. McCrary*,
427 U. S. 160 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...17

*Sarullo v. U.S. Postal Service*,
352 F.3d 789 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Schmidt v. Skolas*,
770 F.3d 241 (3d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . .22, 25, 40

*Sentinel Trust Co. v. Universal Bonding Ins. Co.*,
316 F.3d 213 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Silvestri v. Borough of Ridgefield*,
A-1694-22 N.J. (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Sullivan v. Little Hunting Park, Inc.*,
396 U.S. 229 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...17

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...12, 13, 14

*Todaro v. Twp. Of Union*,
27 F. Supp. 2d 517 (D.N.J. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . .29

*University of Texas Southwestern Medical Center v. Nassar*,
570 U.S. 338 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...19

# TABLE OF AUTHORITIES (CONT.)

**Federal Statutes:**

18 U.S.C. § 3006A et seq. – Adequate Rep. of Def . . . . . .6, 8, 10, 42, 43, 46, 48

28 U.S.C. § 1291 – Final Decisions of District Courts . . . . . . . . . . . . . . . . . . . .1

28 U.S.C. § 1331 – Federal Question . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1332 – Diversity Citizenship . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

28 U.S.C. § 1658 – Time Limits for Civil Action . . . . . . . . . . . . . . . . . . . . . 39

29 U.S.C. §§ 201-219 (Fair Labor Standards Act) . . . . . . ...1, 3, 4, 5, 8, 9, 28, 29

29 U.S.C. §§ 621-634 (ADEA of 1967). . . . . . . . . . . . . . . ...3, 8, 10, 19, 40, 41, 42

42 U.S.C. § 1981 – CRA of 1866: Equal Rights Under the Law . . . . . . . passim

42 U.S.C. § 1982 – CRA of 1866: Property Rights of Citizens . . . . . . . . . . . 17

42 U.S.C. § 2000d et seq. (Title VI) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .passim

42 U.S.C. § 2000e et seq. (Title VII) . . . . . . . .3, 8, 10, 16, 19, 20, 23, 40, 41, 42

42 U.S.C. §§ 6101 – 6107 – ADA (1975) . . . . . . . . . . . . . ...3, 8, 10, 19, 40, 41, 42

Civil Rights Act of 1991. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

Criminal Justice Act of 1964. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Digital Accountability and Transparency (DATA) Act of 2014. . . . . . . . . . . 25

**New Jersey State Statutes:**

N.J.S.A. § 2A:14-2 (Personal Injury) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

N.J.S.A. § 10:5-12 et seq. (Law Against Discrimination) 3, 4, 5, 8, 9, 34, 35, 37

N.J.S.A. § 34:19-1 – 34:19-14 (CEPA) . . . . . . . . . ...3, 4, 5, 8, 9, 33, 35, 36 , 37, 39

# TABLE OF AUTHORITIES (CONT.)

**Other Authorities:**

Fed. R. App. P. – Rule 25(a)(2)(B)(ii) – Electronic Service . . . . . . . . . . . . . . .CoS

Fed. R. Evid. – Rule 201 – Judicial Notice of Adjudicative Facts . . . . . . .24, 25

Fed. R. Civ. P. 8(a) – Plain Statement for Claim . . . . . . . . . . . . . .12, 13, 41, 42

Fed. R. Civ. P. 12 (b) (6) – Motion to Dismiss. . . . . . . . . . . . . . . . . . . . .passim

Fed. R. Civ. P. 56 – Summary Judgment . . . . . . . . . . . . . .14, 20, 21, 26, 27, 36

U.S. Constitution – Article III, Section 2, Clause 1 (Legal Standing) . . . . . . 48

USAspending.gov, U.S. Department of Treasury, Bureau of the Fiscal Service
    ETS Funding Chart
    (https://www.usaspending.gov/recipient/e3896a2e-254d-b2ef-073d-a9d99c35d049-P/latest) . . . .25

USAspending.gov, U.S. Department of Treasury, Bureau of the Fiscal Service
    ETS Funding Contract
    (https://www.usaspending.gov/award/CONT_AWD_EDIES13C0017_9100_-NONE-_-NONE-) . . 26

# JURISDICTIONAL STATEMENT

The basis of the District Court's jurisdiction includes both 28 U.S.C. § 1331 – *Federal Question* and 28 U.S.C. § 1332 – *Diversity of Citizenship*. Under § 1331, "The district courts shall have original jurisdiction of all civil actions arising under the U.S. Constitution, laws, or treaties of the United States." The District Court's jurisdiction under § 1331 is established in this case through a claim of a violation of 42 U.S.C. § 1981 – *Equal Rights Under the Law* ("Section 1981"). In addition, Jones claims of violations of 42 U.S.C. § 2000d et seq. ("Title VI") and 29 U.S.C. §§ 201-219 – *Fair Labor Standards Act* ("FLSA") also invoke the District Court's jurisdiction under § 1331.

In regard to the District Court's jurisdiction under § 1332 – *Diversity of Citizenship*, Jones' citizenship is of Georgia, and ETS' citizenship is of New Jersey. The amount in controversy is $952,440 (*nine hundred fifty-two thousand, four hundred and forty dollars*). The two elements of differing citizenship and a claimed amount over $75,000 (seventy-five thousand dollars) establish the District Court's diversity jurisdiction.

The basis of this Court's appellate jurisdiction is established under 28 U.S.C. § 1291 – *Final Decision*. This statute establishes that the Court of Appeals shall have jurisdiction of appeals from all final decisions of the district courts. In the District Court's *Order*, entered on February 3, 2026 and from which this appeal is taken, it granted ETS' *Motion to Dismiss* and terminated the case, making the

aforementioned *Order* a final order.  Thus, the Court of Appeals for the Third Circuit has appellate jurisdiction over the District Court.

The District Court's *Order*, from which this appeal is taken, was entered on February 3, 2026.  Jones filed his *Notice of Appeal* on February 18, 2026.

Jones asserts, in good faith, that this instant appeal is taken from the District Court's *Order* which is a final order and disposes of all parties' claims.

## **QUESTIONS PRESENTED**

There are six questions that are presented to the Third Circuit:

1.  Considering Section 1981 and Title VII are analyzed under same standards and in light of the recent *Muldrow v. City of St. Louis* (2024) ruling, lowering the standard to "some harm", did the District Court err in dismissing Jones' Section 1981 claim, concluding his pleadings were insufficient?

2.  Did the District Court err in dismissing Jones' Title VI claim under Fed. R. Civ. P. – Rule 12(b)(6) by concluding that Jones failed to plead the primary objective requirement?

3.  Based on the pleadings for Jones' FLSA, NJ-CEPA, and NJ-LAD claims, in which Jones alleged he complained to the director about others being promoted over him, did the District Court err in determining Jones' actions did not constitute protected activities?

4.  Did the District Court err in failing to recognize the causal connection between Jones' protected activities and ETS' subsequent termination of Jones' employment, thus demonstrating retaliation?

5.  Did the District Court err in ruling none of Jones' claims alleged retaliation?

6.  Are there instances where mitigating circumstances, like an undisclosed list of terminated employees in a discrimination or civil rights case, could give rise to toll the time-clock in which to file a charge with a federal agency because of the need to compare similarly situated employees in the list?

## **INTRODUCTION**

The central issue in this appeal concerns pleading sufficiency for multiple claims. All of the claims from Jones' Operative Complaint were argued against by Appellee-ETS, under Fed. R. Civ. P. – Rule 12(b)(c) in a *Motion to Dismiss* ("MTD") for failure to state a claim upon which relief can be granted. Prior to ETS' most recent MTD, ETS moved twice to dismiss Jones' complaints. As such, if the discussion in this appeal feels repetitive from the court below, it is because, in part, it is. This is simply because Jones' Section 1981 and Title VI claims were presented in his original *Complaint* and the two amended complaints, and they have remained consistent throughout. In addition, Jones' FLSA, NJ-CEPA, and NJ-LAD claims were also presented in the two amended complaints. Following Jones' *Second Amended Complaint*, ETS made a couple of last ditch efforts on new theories to support its most recent MTD; as such, the arguments only differ slightly.

It is necessary to invalidate the premise set by ETS and agreed upon by District Court, suggesting that Jones' claims of discrimination should be dismissed, essentially because there are no allegations of overt discrimination. The notion that there must be unabashed racial discrimination, for a complaint to survive a motion to dismiss, is a false narrative. *Reasonable Inference* is the standard established in the U.S. Supreme Court case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). This is the standard that a complaint and its allegations must meet in order to survive a motion to dismiss. Inference can be defined as construing the allegations

-4-

broadly, and viewing those allegations in the light most favorable to the plaintiff; this is another standard established in a separate U.S. Supreme Court case, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Furthermore, this Court knows and understands that racial discrimination from an employer can be both deliberate but yet concealed.  Indeed, reasonable persons can and would "infer" Jones' claim of surreptitious discrimination from the allegations in the Operative Complaint.

Ultimately, Jones brings claims pursuant to 42 U.S.C. § 1981 ("Section 1981"); 42 U.S.C. § 2000d et seq. ("Title VI"); 29 U.S.C. §§ 201–219, Fair Labor Standards Act ("FLSA"); N.J.S.A. §§ 34:19-1 – 34:19-14, New Jersey Conscientious Employee Protection Act ("NJ-CEPA"); and N.J.S.A. § 10:5-12 et seq., New Jersey Law Against Discrimination ("NJ-LAD").

## STATEMENT OF THE CASE

The case before the Third Circuit is case 3:23-cv-20326-MAS-RLS – *Solomon A. Jones v. Educational Testing Service*.  It was established in the District of New Jersey on September 11, 2023, before District Judge Michael A. Shipp and Magistrate Judge Rukhsanah L. Singh.  Appellant, Jones, is an African-American male and former employee of the Appellee.  Jones is also a self-represented litigant who was approved to proceed *in forma pauperis*.  Appellee is a non-profit corporation, namely Educational Testing Service ("ETS").  The nature of the case is an employment discrimination and retaliation case, with multiple claims of discrimination and retaliation under different federal statutes.  After a District

Court *Order*, granting ETS' *Motion to Dismiss* and closing the case, Jones makes his appeal to this Court, the Court of Appeals for the Third Circuit.

Jones' initiating documents were filed on September 11, 2023, and they included the *Complaint* (*R. 1*) and attachments. (#1: *Civil Cover Sheet* document; #2: *Application to Proceed in Forma Pauperis*; #3 *Text of Proposed Order*; and #4 *Proposed Summons*). On December 22, 2023, form *USM-285* for service by the U.S. Marshals was received by the District Court. The Defendant, ETS, was served on January 9, 2024 by the U.S. Marshals (*R. 10*). On February 6, 2024, ETS moved (*R. 15*) to dismiss Jones' *Complaint*. On February 20, 2024, Jones opposed (*R. 16*). On February 26, 2024, ETS filed a *Reply Brief* (*R. 17*) in support of its *Motion to Dismiss*. On March 3, 2024, Jones filed a *Motion to Strike ETS' Reply Brief* (*R. 18*). On March 14, 2024, ETS filed a *Response* (*R. 21*) in opposition to Jones' *Motion to Strike*. On July 29, 2024, Jones filed a *Notice of Constitutional Challenge* (*R. 23*), challenging 18 U.S.C. § 3006A et seq. – *Adequate Representation of Defendants*.[1] On September 13, 2024, the Court entered an *Opinion* (*R. 24*) and an *Order* (*R. 25*) denying Jones' *Motion to Strike* and granting ETS' *Motion to Dismiss*, with permission for Jones to amend his *Complaint*. On September 30, 2024, Jones amended his *Complaint* (*R. 26*). On October 29, 2024, ETS moved to dismiss Jones' *Amended Complaint* (*R. 29*). On November 18, 2024, Jones opposed (R. 30) ETS' *Motion to Dismiss* his *Amended Complaint*. On November 25, 2024, ETS filed a

---

[1] Jones freely admits that the constitutional challenge to statute 18 U.S.C. § 3006A et seq. – *Adequate Representation of Defendants* is unrelated to ETS.

**-6-**

*Reply* (*R. 31*) in support of its *Motion to Dismiss* Jones' *Amended Complaint*. On May 30, 2025, the Court entered an *Opinion* (*R. 32*) and an *Order* (*R. 33*) granting ETS' *Motion to Dismiss* Jones' *Amended Complaint*, with permission for Jones to amend his *Amended Complaint*. On June 12, 2025, Jones amended his *Amended Complaint* (*R. 34*). On July 10, 2025, ETS moved to dismiss Jones' *Second Amended Complaint* (*R. 37*). On July 15, 2025, Jones opposed (*R. 38*) ETS' *Motion to Dismiss* his *Second Amended Complaint*. On July 28, 2025, ETS filed a *Reply* (*R. 39*) in support of its *Motion to Dismiss* Jones' *Second Amended Complaint*. On February 3, 2026, the Court entered an *Opinion* (*R. 42*) and an *Order* (*R. 43*) granting ETS' *Motion to Dismiss* Jones' *Second Amended Complaint*. On February 18, 2026, Jones filed a *Notice of Appeal*.

## STATEMENT OF FACTS

The District Court's *Order* granted ETS' *Motion to Dismiss* and dismissed Jones' *Second Amended Complaint* with prejudice. The Court's *Order* primarily addressed Jones' Section 1981 and Title VI claims. The Court generally dismissed those claims based on what it believed were insufficient pleadings. The Court specifically dismissed Jones' Title VI claim for its belief that Jones failed to allege a primary objective for ETS' federal financial assistance was employment. This particular finding becomes a major point of contention for Jones. The Court dismissed Jones' additional claims under 29 U.S.C. §§ 201-219 Fair Labor Standards Act ("FLSA"); New Jersey Conscientious Employee Protection Act ("NJ-

-7-

CEPA"); and New Jersey Law Against Discrimination ("NJ-LAD") more briefly and mostly as a collective for what it believed was a failure to allege protected activities with respect to each of the aforementioned statutes. The Court did not further address Jones' claims under 42 U.S.C. §2000e, et seq. ("Title VII") of the *Civil Rights Act of 1964*; 29 U.S.C. §§ 621-634, the *Age Discrimination in Employment Act of 1967* ("ADEA"); and 42 U.S.C. §§ 6101-6107, the *Age Discrimination Act of 1975* ("ADA") because the Court stated it had already addressed and dismissed those claims with prejudice in a prior *Opinion* (A174). Lastly, the Court did not address Jones' claim under 18 U.S.C. § 3006A et seq. – *Adequate Representation of Defendants* ("Federal Public Defender") because the Court stated Jones did not have standing, and it had already addressed and dismissed that claim with prejudice in a prior *Opinion* (A172, A174). Jones now makes his appeal.

## SUMMARY OF THE ARGUMENT

*Section 1981 Claim*: The District Court erred by applying a heightened and erroneous pleading standard that ignored the factual allegations in Jones' *Complaint*. Under the plenary (de novo) standard of review, Jones' *Complaint* sufficiently alleged that race was the "but-for" cause of ETS' discrimination. Specifically, the employee table in Jones' Operative Complaint shows several similarly situated non-African-American employees being treated differently than Jones. In addition, Jones pleaded that he complained to the director of the program about why there were SLs being hired throughout his tenure, but yet he never saw

-8-

the position posted or was asked to apply to the position, despite his high qualifications, his tenure of being the first class of raters in the program, and his high performance ratings.  ETS' subsequent termination of Jones' contract at the end of that particular grading season is directly related to his email complaints. Furthermore, the director's inconsistent and contradictory responses, illustrate a causal connection between the aforementioned discrimination and termination. These facts exceed the plausibility threshold required to survive a motion to dismiss, under Fed. R. Civ. P. – Rule 12(b)(6).

*Title VI Claim*: Dismissal was improper because his references to figures from public sources, whose accuracy cannot be disputed, required the District Court to take notice, which it failed to do.  An appellate court, as well as the District Court may consider matters of public record integral to a complaint at any time, if so requested.  The references to figures in Jones' Operative Complaint and the descriptions related to those figures in the *Notice of Judicial Review* combine to adequately meet the primary objective pleading requirement that the federal financial assistance received by ETS was to provide employment.

*FLSA, NJ-CEPA, and NJ-LAD Claims*: The District Court erred in collectively dismissing Jones' FLSA, NJ-CEPA, NJ-LAD claims.  Dismissal was improper because Jones' email complaints to the director of the program constitute protected activities; Jones was then subsequently terminated.  The director's inconsistent and contradictory responses, along with the same-day email

**-9-**

termination, a deviation from normal termination standards and practices, create a causal connection from Jones' protected activities to his termination.

*Title VII, ADEA, and ADA Claims*: Jones' unabashedly stated in the Operative Complaint that he did not file a charge with the respective federal agencies for his Title VII, ADEA, and ADA claims.  Jones argues that these claims cannot be time-barred for statute of limitations failures related to filing a charge because ETS' "undisclosed list" of supposed terminated employees is directly impugned in Jones' original *Complaint*, and therefore, the "undisclosed list" must be unearthed in discovery.

*18 U.S.C. § 3006A et seq.*: Jones argues that there is an inherent financial conflict of interest between the public defender and the prosecutor that stems from the provisions in the statute 18 U.S.C. § 3006A et seq.  Jones further argues for a third-party standing exception for this claim and that this Court can and should give a declaratory judgment because of unrepresented parties' inability to adequately represent themselves due to the likelihood of economic hardship and the "unlikelihood" of a public defender raising the issue on behalf of unrepresented parties, invalidating his/her own office.

## ARGUMENT

**I.     THE DISTRICT COURT ERRED IN DISMISSING JONES' SECTION 1981 CLAIM FOR PLEADING INSUFFICIENCY.**

**A.     Standard of Review:**

This Court exercises plenary (de novo) review over a district court's grant of a motion to dismiss for failure to state a claim, under Fed. R. Civ. P. – Rule 12(b)(6). *See Connelly v. Lane Construction Corp.*, 809 F.3d 780 (3d Cir. 2016).  In conducting this review, the Court must accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009).  To survive dismissal, a Section 1981 claim must allege facts showing that, "but-for" race, the appellant would not have suffered the loss of a legally protected right. *Comcast Corp. v. National Association of African-American-Owned Media (NAAAOM)*, 589 U.S. 327 (2020).

**B.     The District Court Twice Erroneously Held Jones' Section 1981 Claim to an Evidentiary Standard at Pleading Stage.**

In the District Court's first two *Opinions*, granting ETS' *Motion to Dismiss*, it erroneously twice held the McDonnell-Douglas burden-shifting framework as the pleading standard and basis for dismissing Jones' complaints. (A14, A16-A17, A25, A26, A28-A29).  The McDonnell-Douglas framework, established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (modified by *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993)), is a framework in which a plaintiff must first

-11-

establish a prima facie case of employment discrimination, by demonstrating he/she (1) was a member of a protected class, (2) was qualified for the position at issue, (3) suffered an adverse employment action, and (4) was ultimately replaced under circumstances that support an inference of unlawful discrimination. *Alcantara v. Aerotek Inc.*, 765 F. App'x 692 (3d Cir. 2019).  After this is demonstrated, the defendant must then give a legitimate, non-discriminatory reason for its actions. Once this is done, the burden shifts back to the plaintiff to show that the reason given was in fact pretext for discrimination. However, one very important matter to note is that the McDonnell-Douglas framework is inapplicable to a Rule 12(b)(6) motion to dismiss because this particular framework is an "evidentiary standard", not a pleading requirement. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002).  The U.S. Supreme Court identified that discovery may indeed produce direct evidence of discrimination, rendering the McDonnell-Douglas framework inapplicable to a motion to dismiss.  That is to say, a plaintiff need not allege facts specifically indicating that the plaintiff could carry the burden he/she might ultimately bear under McDonnell-Douglas.  In *Swierkiewicz v. Sorema N. A.*, the U.S. Supreme Court unanimously held that a plaintiff in an employment discrimination case is not required to plead facts establishing a prima facie case under McDonnell-Douglas to survive a motion to dismiss.  The Court reasoned that imposing such a requirement at the pleading stage would be contrary to the notice of pleading standard of Fed. R. Civ. P. – Rule 8(a)(2), which only requires a "short and plain

-12-

statement of the claim showing that the pleader is entitled to relief."[2] Discovery is often necessary to gather the facts needed to establish a prima facie case. The precise requirements of a prima facie case can vary depending on the context and before discovery has unearthed the relevant facts and evidence. *Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012).

Not only did the District Court erroneously twice hold Jones to an improper pleading standard, the Court scolded Jones that "Discovery, however, is not an opportunity to conduct a fishing expedition in order to find a cause of action", citing *Ranke v. Sanofi-Synthelabo Inc.*, 436 F. 3d 197 (3d Cir. 2006) (A16). The District Court went on to say, "Because the Court's assessment of Plaintiff's pleading sufficiency is limited to the facts alleged in the Complaint, it will not speculate on what discovery may or may not reveal", citing *Addison v. Amazon.com, Inc.*, No. 22-01071, 2022 WL 2816946, at *4 n.7 (D.N.J. July 19, 2022), effectively cutting off the essential purpose of discovery in discrimination cases.

The Third Circuit has consistently followed *Swierkiewicz v. Sorema N.A.* For example, in *Fowler v. UPMC Shadyside*, the Third Circuit reiterated the holdings in *Swierkiewicz v. Sorema N.A.* And although a plaintiff will eventually need to present evidence to satisfy the McDonnell-Douglas framework to survive summary judgment or prevail at trial, their initial complaint only needs to provide sufficient

---

[2] Under the relatively new pleading standards of *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*, Fed. R. Civ. P. – Rule 8(a) - *Plain Statement* contradicts the aforementioned case law. Moreover, it will be difficult to make a plain statement and still plead facts sufficient to move allegations from possible to plausible.

factual allegations to make their claim of discrimination plausible, without necessarily hitting every McDonnell-Douglas element.  The idea is to avoid requiring plaintiffs to plead detailed facts before discovery, especially when direct evidence of discrimination is often unavailable at the outset.

In summary, the McDonnell-Douglas burden-shifting framework is a method for plaintiffs to prove intentional discrimination through circumstantial evidence when direct evidence of discriminatory motive is lacking at the "trial stage".

In light of *Swierkiewicz v. Sorema N. A.*, this Court should conclude that Jones need not plead all of the elements of a prima facie case in order to survive a motion to dismiss; the McDonnell-Douglas framework is only required when considering summary judgment or at trial, not for a motion to dismiss.

### 1.    Jones' Employee Table of Similarly Situated Employees Shows Intentional Discrimination.

In Jones' Operative Complaint, he displays an employee table of 45 ETS employees who were similarly situated as he (A44-A45).  The first part (first 8 entries) of Jones' table shows similarly situated, non-African-American employees who began as Raters and were later promoted to the Scoring Leader ("SL") position. The second part (last 37 entries) of the table shows ETS continually hiring persons to the SL position throughout Jones' tenure.  When Jones complained as to why he had "never" seen an opening for the SL position posted or why he had "never" been asked to apply for the SL position throughout his tenure, the director of the

-14-

program flat out lied, as the director's contradictory responses show (A46-A47).

Specifically, the director's email responses were that ETS was not hiring new SLs because there was a sufficient amount of SLs returning and that the increased number of works being graded by automated processes had eliminated the need to promote any Raters to SLs. This particular response is contradictory because it is clear from the aforementioned table that ETS was indeed promoting persons and hiring new SLs throughout Jones' tenure, all while excluding Jones from the position.

The District Court's *Opinion* asserted that ETS' knowledge of Jones' protected trait and decision not to promote him was, by itself, not sufficient to support his Section 1981 discrimination claim, without more facts regarding whether employees not of his protected trait were promoted or hired by ETS, citing *Sarullo v. U.S. Postal Service*, 352 F.3d 789 (3d Cir. 2003)) (A176). Directly after that assertion, the Court goes on to say that Jones' employee table shows individuals who were promoted from Rater to SL well before Jones raised a complaint regarding an SL promotion in 2021. However, the District Court misconstrued Jones' email complaints to mean why he was not "immediately" considered for the SL position in the upcoming grading period (A176). Jones' emails complained about why he had "never seen" or "never been asked" about applying to the SL position, meaning during his tenure from 2015 through 2021 (A46). This is a slight difference in text and interpretation, but it is a monumental difference in the

**-15-**

context of discrimination, as Jones alleged that he was excluded from the SL position throughout his tenure, not just his last year of employment with ETS.

### 2.      U.S. Supreme Court Case *Muldrow v. City of St. Louis* (2024) Standard of "Some Harm" Applies to Section 1981 Claims.

Although Title VII's scope for discrimination is broader than Section 1981, in practice, Section 1981 functions similarly to Title VII, in that it prohibits employers from intentionally discriminating against employees on the basis of race. For example, the tests for proving a racially hostile work environment asserted under Section 1981 and Title VII are the same. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264 (4th Cir. 2015). It follows that if a litigant can show a violation of Section 1981, he has also implicitly shown a violation of Title VII.

The District Court applied an improper heightened standard, requiring Jones to show "significant harm". Under the U.S. Supreme Court's recent holding in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), a plaintiff need only plead "some harm" to an identifiable term or condition of employment. The Court remanded that an employer's lateral move of a woman officer can be discriminatory, depending on the work responsibilities and circumstances after the move. Jones satisfied this lower threshold by alleging: the CAASPP-Mathematics hourly wage-rate ($13 per hour) was the lowest among all Rater-like positions; Jones had a lower hourly wage-rate ($13 per hour) than the average rater ($15 per hour); and Jones' hourly rate ($13 per hour) was the same when he was first employed (2015) with

-16-

ETS as it was when his employment with ETS was terminated (2021), while others were given a raise (A48).  Furthermore, ETS does not dispute that Jones: was qualified for the position he held; was qualified for other similar (lateral) positions he applied for; and was qualified for the SL position in question.

## C.    THE DISTRICT COURT ERRED IN DETERMINING JONES' SECTION 1981 CLAIM DID NOT ALLEGE RETALIATION.

In the U.S. Supreme Court case *CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008), the Court held that Section 1981 encompasses retaliation claims. Because this holding rests in significant part upon stare decisis principles, the Court looked back at the relevant interpretive history.  In *Sullivan v. Little Hunting Park, Inc.*, 396 U. S. 229 (1969), as later interpreted and relied on by *Jackson v. Birmingham Bd. Of Ed.*, 544 U. S. 167 (2005), the Court recognized that retaliation actions are permitted by 42 U. S. C. §1982, which provides that "[a]ll citizens … shall have the same right, … , as is enjoyed by white citizens … to inherit, purchase, lease, sell, hold, and convey real and personal property."  Many federal courts have long interpreted § 1981 and § 1982 alike because they were enacted together, have common language, and serve the same purpose of providing black citizens the same legal rights as enjoyed by other citizens. *See Runyon v. McCrary*, 427 U. S. 160 (1976).  In 1989, the case of *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), narrowed Section 1981 by excluding from its scope conduct occurring after formation of the employment contract, where retaliation would most

-17-

likely be found.  Subsequently, congress enacted the Civil Rights Act of 1991, which was designed to supersede *Patterson v. McLean Credit Union*, *See Jones v. R. R. Donnelley & Sons Co.*, 541 U. S. 369 (2004), by explicitly defining Section 1981's scope to include post-contract-formation conduct (*See* Section 1981(b)).  Since 1991, the federal courts of appeals have uniformly interpreted Section 1981 as encompassing retaliation actions (*emphasis added*).

In the District Court's *Opinion* (A175) (footnote 9), the Court claimed that Jones attempted to "amend" his *Second Amended Complaint* through his opposition brief to a *Motion to Dismiss*.  The Court implied that Jones only alleged retaliation in the opposition brief, when in fact Jones' *Second Amended Complaint* uses the words "retaliation" or "retaliatory" four times (A36).  Specifically, in paragraph 12 (*two paragraphs within*), Jones alleges "…the Defendant's retaliation, terminating the Plaintiff's employment contract, is directly linked to the Plaintiff's inquiries about promotion to the SL position because of the inconsistencies in the director's reply (illustrated in the table above at paragraph #5)" (A49-A50).  Directly preceding this assertion, Jones explicitly states violations of Section 1981 and Title VI.  The District Court further erred by asserting that Jones, "alleges only discrimination, and not retaliation, under his Section 1981 claim." (A175) (footnote 9).  As previously stated, since 1991, courts have interpreted Section 1981 claims to include retaliation; therefore, Jones' Section 1981 claim also encompasses retaliation.

-18-

**D.    "But-For" Cause of Discrimination.**

In *Comcast v. NAAAOM*, the U.S. Supreme Court ruled that a plaintiff who alleges race discrimination under Section 1981 must allege facts and has the ultimate burden of showing that race was **a** "but-for" cause of the plaintiff's injury, and that burden remains constant over the life of the lawsuit.

Previously, federal courts generally applied the same burden of proof for race discrimination claims brought under Section 1981 and Title VII, which is that the plaintiff only bears the burden of showing that race was a "motivating factor" in the defendant's actions.  However, after the ruling in *Comcast v. NAAAOM*, the standard applied in Title VII cases is no longer the model for determining Section 1981 claims.  The reasoning in *Comcast v. NAAAOM* largely replayed the arguments adopted in *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013) and *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009).

In *University of Texas Southwestern Medical Center v. Nassar*, the U.S. Supreme Court held that a plaintiff is required to establish a "but-for" cause to prevail on a retaliation claim under Title VII.  In *Gross v. FBL Financial Services, Inc.*, the U.S. Supreme Court held that a plaintiff is also required to establish a "but-for" cause to prevail on a claim under the Age Discrimination in Employment Act ("ADEA").  This line of cases contradicted the reasoning in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) in that a plaintiff could prevail on a Title VII discrimination claim by showing his or her protected trait was a "motivating factor"

-19-

in a decision.  However, an employer could still escape liability through an

affirmative defense, if the employer showed it reached the same outcome without

considering the plaintiff's protected trait; Congress thought this too employer

friendly.  As such, Congress' made an amendment to Title VII in 1991 in response to

*Price Waterhouse v. Hopkins*; however, Congress did not amend Section 1981.

In *Bostock v. Clayton County, Ga.*, 590 U.S. 644 (2020), the U.S. Supreme

Court held that Title VII prohibits discrimination because of sexual orientation and

gender identity.  Its reasoning centered on the ideas of causation: When an

employer discriminates because of sexual orientation or gender identity, it is also

discriminating because of sex.  In his causation analysis, Justice Gorsuch

emphasized a few key points about "but-for" cause.  He noted that a "but-for" cause

can be sweeping and also emphasized:

- "But-for" cause does not mean sole cause.

- Events can have multiple "but-for" causes.

- A protected trait does not need to be the primary reason to be the "but-for" reason.

In discrimination cases, the party moving for summary judgment or to

dismiss the case is typically the defendant.  The non-moving party is typically the

plaintiff.  The procedural rules for these motions require federal courts to view all

evidence and inferences to be drawn from the evidence in favor of the non-moving

party.  Given these procedural standards, it will often be difficult to declare that a

plaintiff will be unable to establish a "but-for" cause at the pleading stage and thus, inappropriate to dismiss a case or grant summary judgment for the defendant based on this new standard.  If a plaintiff has evidence that a protected trait played a role in an outcome, it will often be impossible to determine exactly what role the protected trait played at these stages.

The "but-for" cause standard applies to this instant case in that  if Jones were not an African-American male, he would: have had equal pay like other similarly situated non-African-American employees; have had a raise within the time he was employed like other similarly situated non-African-American employees; have had an opportunity to move to a similar position (lateral move) like other similarly situated non-African-American employees; have had an opportunity to be promoted to an SL position like other similarly situated non-African-American employees; and have had an opportunity to apply to the replacement position like other similarly situated non-African-American employees.

## II.   THE DISTRICT COURT ERRED IN DISMISSING JONES' TITLE VI CLAIM BY FAILING TO TAKE JUDICIAL NOTICE OF PUBLIC RECORDS INTEGRAL TO COMPLAINT.

### A.   Standard of Review:

This Court's review of a Fed. R. Civ. P. – Rule 12(b)(6) dismissal is a plenary (de novo) review. *See Fowler v. UPMC Shadyside*.  For claims brought under Title VI, the Court reviews whether the complaint adequately alleges that a primary

objective of the federal financial assistance is to provide employment. *See* 42 U.S.C. § 2000d-3 and *Chowdhury v. Reading Hospital and Medical Center*, 677 F.2d 317, 320-22 (3d Cir. 1982). The court must determine if the factual allegations, taken as true, state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal.*

When reviewing a Rule 12(b)(6) motion to dismiss, the court must accept as true all allegations in the complaint and must provide the plaintiff with the benefit of all inferences that may be drawn from the contents of the complaint. *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008). The court may not grant a motion to dismiss unless it is certain that no set of facts can be proven that would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41 (1957). It is well-settled that in considering a motion to dismiss, a court may consider the allegations of the complaint, **matters of public record**, and documents specifically referenced in or attached to the complaint. See *Gil v. Related Mgmt Co.*, No. 06-2174 (WHW), 2006 WL 2358574, *2 (D.N.J. Aug. 14, 2006) (citing *Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213 (3d. Cir. 2003)). Furthermore, courts are to consider documents integral to or explicitly relied upon in the complaint, without converting the motion to one for summary judgment. *See Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014).

Jones referenced federal funding figures received by ETS in his Operative Complaint. Those funds are a matter of public record and should have been considered by the District Court in support of Jones' complaint.

-22-

**B.      Title VI's Statutory Text & Title VI's Judicial Interpretation.**

42 U.S.C. § 2000d. et seq. ("Title VI") of the Civil Rights Act of 1964 provides that "no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." Cases under Title VI are governed by the same framework as those under other federal civil rights laws such as Title VII, which also covers employment discrimination claims. See *Hankins v. Temple University* (*Health Sciences Center*), 829 F.2d 437 (3d Cir. 1987); *N.A.A.C.P. v. Medical Center, Inc.*, 657 F.2d 1322 (3d Cir. 1981).

Under Title VI, specifically § 2000d–3, the statutory text reads:

> Construction of provisions not to authorize administrative action with respect to employment practices except where [a] primary objective of Federal financial assistance is to provide employment. Nothing contained in this subchapter shall be construed to authorize action under this sub-chapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment.

Moreover, this particular provision of Title VI refers to not authorizing any "administrative action", unless a primary objective of the federal financial

**-23-**

assistance was to provide employment. Furthermore, the statute is "not" ambiguous. Nonetheless, federal courts felt the need to construe and judicially read into the text that the primary objective requirement "includes civil action". Federal courts reasoned that because the private right of action under Title VI is implied from the statute, it cannot (or they believe it *should not*) be broader than the express authority given to the federal agencies that are tasked with enforcing its laws and regulations, even though the interpretation is not absolute. In *Chowdhury v. Reading Hospital and Medical Center*, the Third Circuit extended the primary objective requirement to private individuals. The Court held the limitation in Section 604 (42 U.S.C. § 2000d-3), which restricts agency action to cases where a primary objective of funding is employment, also applies to private rights of action. Moreover, if an agency is barred from taking action against an employer because the funding is not for employment, a private citizen is "typically" barred as well.

C.    Jones' *Notice of Judicial Review*.

Included with this brief, in a separate document, is Jones' *Notice of Judicial Review*. Under Federal Rules of Evidence ("Fed. R. Evid.") – Rule 201(c)(2), a court "**must** take judicial notice if a party requests it and the court is supplied the necessary information." Furthermore, under Fed. R. Evid. – Rule 201(d), a court "may take judicial notice at **any** stage of the proceeding." The consideration of judicial notice at any stage includes appellate review, as well as the district court. Lastly, under Fed. R. Evid. – Rule 201(b)(2), a court may notice facts that "can be

-24-

accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The website usaspending.gov is the official open data source for federal spending, mandated by the DATA Act of 2014; its records are not subject to reasonable dispute. Jones chronologically delineated the number of awards and the amount of those awards each year he was employed with ETS in the Operative Complaint (A45-A46). The amounts Jones referenced are identical to the chart found at usaspending.gov (See A59). The amounts are too large to simply estimate from general knowledge, implying that Jones referenced the figures from some source; that source was indeed usaspending.gov. (*Recipient Profile: Educational Testing Service*, USASPENDING.GOV, last visited April 1, 2026, usaspending.gov. A59) https://www.usaspending.gov/recipient/e3896a2e-254d-b2ef-073d-a9d99c35d049-P/latest.

Although the District Court mischaracterized the figures as being "peppered", it properly characterized the figures as "references" (A98, A178). "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Schmidt v. Skolas.*

The official record for one of ETS' contracts, having identification number EDIES13C0017, confirms a start date of March 07, 2013 and an end date of May 31, 2019 (*Jones was employed from February 11, 2015 through November 10, 2021*). The description in the aforementioned contract's "*Product or Service Code (PSC)*" indicates that a primary objective for the contract was employment, satisfying the "judicial interpretative" threshold and requirement for a Title VI claim.

(*Contract: Educational Testing S1ervice*, USASPENDING.GOV, last visited April 1, 2026, usaspending.gov. A66).

https://www.usaspending.gov/award/CONT_AWD_EDIES13C0017_9100_-NONE-_-NONE-.

### D.    Jones' Title VI Claim Meets Pleading Requirements.

To establish a prima facie for a Title VI violation, the plaintiff must plead sufficiently that: (1) there is racial or national origin discrimination; (2) and the entity engaging in discrimination is receiving federal financial assistance. *Manning v. Temple University*, 157 F. App'x 509 (3d Cir. 2005).

Jones' Title VI claim adequately alleges racial discrimination.  In Jones' Operative Complaint, Jones puts forth an employee table of 45 employees who were similarly situated as he but are not of the same protected class as he; these employees obtained the position directly above him, the SL position, either through promotion from the Rater position or through direct hire.  Furthermore, many of these employees obtained the SL position after the inception of the CAASPP and Badger programs, and Jones began his employment conducting work for both programs at their inception.  The "inference" here is that because of Jones' protected trait, he was treated differently than other similarly situated employees.

In *Feng v. University of Delaware*, 785 F. App'x 53 (3d Cir. 2019), a case alleging national origin discrimination under Title VI, the Third Circuit vacated the district court's summary judgment to the University.  The district court's reasoning for granting summary judgment was that Feng had failed to provide valid

-26-

comparator evidence.  The district court assumed that the McDonnell-Douglas framework applied to Feng's discrimination claim.  However, the Third Circuit explained that a discrimination plaintiff is not required to use that method or any particular method.  Although comparative evidence is often highly probative of discrimination, it is not an essential element of a plaintiff's case. *Anderson v. Wachovia Mortgage. Corp.*, 621 F.3d 261, 268–69 (3d Cir. 2010) (citing *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344 (3d Cir. 1999)).  Instead, the permissible evidence may take a variety of forms. *Patterson v. McLean Credit Union.*

In summary, in the Operative Complaint, Jones alleged racial discrimination, and Jones referenced figures from public records which show that, during Jones' tenure, a primary objective of ETS' federal financial assistance was employment.  Although Jones argued in the lower court that there is no explicit primary objective requirement (*And, there is not; it is implicitly read into the statute, and it is not absolute*), Jones also argued that a court may consider the allegations of the complaint, matters of public record, and documents specifically referenced in or attached to the complaint (A128, A132, A136), citing *Gil v. Related Mgmt Co.*; *Sentinel Trust Co. v. Universal Bonding Ins. Co.*.  The District Court's first two opinions agreed with Jones' contention (A10, A24), citing additional Third Circuit case law.  Therefore, Jones' *Notice of Judicial Review* is "not" new evidence; it is simply information that is integral to the complaint and that the District Court failed to consider.  Thus, Jones' Title VI claim meets the pleading requirements.

-27-

## III.   THE DISTRICT COURT ERRED IN DETERMINING JONES' FLSA, NJ-CEPA, & NJ-LAD CLAIMS DID NOT ALLEGE PROTECTED ACTIVITIES & RETALIATION.

### A.   Standard of Review:

This Court reviews a district court's dismissal of a complaint for failure to state a claim, under Fed. R. Civ. P. – Rule 12(b)(6), plenary (de novo). *See Ashcroft v. Iqbal.*  The court must accept all well-pleaded factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff-appellant. *See Bell Atl. Corp. v. Twombly.*

To survive a motion to dismiss, a complaint must contain sufficient factual matter accepted as true, to state a claim to relief that is plausible on its face.  While the FLSA's anti-retaliation provision requires a plaintiff to show they engaged in a protected activity – such as filing a complaint or, as confirmed in *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011), making an oral complaint with sufficient formality – it only requires that the complaint allege facts that make such activity plausible not proven.

The District Court's dismissal was improper when the allegations, viewed in the light most favorable to Jones, plausibly show that Jones lodged a written complaint via email that was "sufficiently clear and detailed for a reasonable employer to understand it, in light of the context, as an assertion of rights protected by the statute". *See Kasten v. Saint-Gobain Performance Plastics Corp.*

-28-

### B.   Jones' FLSA Claim Meets Pleading Requirements.

The Fair Labor Standards Act ("FLSA") - 29 U.S.C. §§201 – 219 establishes minimum wage, overtime pay, recordkeeping, and youth employment standards affecting employees in the private sector and in federal, state, and local governments.  Section 215(a)(3) prohibits any person from retaliating against any employee, and reads:

> No employer shall discharge or in any manner discriminate against any employer with respect to his or her compensation, terms, conditions, or other privileges of employment because the employee has provided, caused to be provided, or is about to provide to the employer, the federal government, or the attorney general of a State information relating to any violation of, or any act or omission the employee reasonably believes to be a violation of, any provision of the title this act is under.

To establish a prima facie case for retaliation under the FLSA, a plaintiff must demonstrate that (1) he or she engaged in an activity protected by the FLSA; (2) he or she suffered an adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection existed between the employee's protected activity and the employer's adverse action. *Todaro v. Twp. Of Union*, 27 F. Supp. 2d 517, 540 (D.N.J. 1998).  In the Operative Complaint, Jones stated that after discovering others were promoted and hired to the SL position before him, he complained to the director about not being invited to

-29-

apply for an SL position (promotion), despite his qualifications, high performance ratings, and his tenure. Jones also complained to the director that the position of SL was never posted internally or externally. Both of these complaints constitute protected activities and indicate possible discrimination. Subsequently, he suffered an adverse action by the employer through the employer's termination of his employment contract. The causal connection is made clear by the director's inconsistent and contradictory responses to Jones' complaints and because of ETS' deviation from the standard practice when terminating employees. Moreover, the director's response that there were sufficient SLs returning and that automated process removed the need to hire more SLs is contradictory to Jones' employee table in his Operative Complaint, which shows that ETS continued to hire and promote individuals to the SL position throughout Jones' tenure. Lastly, ETS' same-day termination email is a deviation from the standard minimum two week notice when terminating an employee.

## 1. Jones' Email Complaints to Director Constitute Protected Activities.

It is necessary to reiterate the point from the previous section that Jones did indeed participate in and properly allege violation of a protected activity. Jones' initial email and follow-up email to the director of the CAASPP program about why the SL position was never posted internally or externally is an example of a good-faith effort of a complaint to a supervisor, manager, or an employer that he believed

there was possible discrimination. In addition, the allegation that the SL position was never posted internally or externally is an example of a belief that a policy, rule, or law was violated. Furthermore, the implication that there were at least 45 non-African-Americans persons who obtained the position of SL before Jones, who is African-American and was employed at the inception of the program as a Rater, along with his high performance ratings and high qualifications, including his teaching experience and educational degrees, point this Court to a "reasonable inference" of intentional racial discrimination.

### 2.    Director's Inconsistent & Contradictory Responses Show Possible Pretext for Discrimination.

As explained in *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994), a plaintiff can demonstrate pretext in two ways: (1) a plaintiff can discredit the employer's proffered reason by showing implausibility, inconsistencies, incoherencies, or contradictions in the employer's explanations that a reasonable fact-finder could disbelieve them or (2) a plaintiff can show discriminatory animus was more likely: by showing evidence of past discrimination, discriminatory remarks, or other evidence suggesting a discriminatory motive.

The director's response to Jones' complaint as to why he had "never" seen the SL position posted internally or externally and why he was "never" asked to apply for the SL position is inconsistent and contradictory for the following reasons: The director stated that there were a sufficient number of SLs returning and that

automated processes had eliminated the need to promote any Raters to SLs; however, the employee table in the Operative Complaint (A44-A45) shows that ETS had both hired persons directly to the SL position and promoted similarly situated Raters to the SL position. These inconsistencies and contradictions are pre-textual responses by ETS, and they also establish a causal link from Jones' protected activity (email complaints about possible discrimination) to his adverse action (termination).

**3.      Retaliation: ETS' Deviation from Standard Terminating Practices & Director's Responses Show Causal Connection Between Protected Activities & Subsequent Termination.**

In *Silvestri v. Borough of Ridgefield*, A-1694-22 N.J., a New Jersey appellate court reversed a trial court's order dismissing a case for lack of evidence for a causal connection. The appellate court found that there was suggestive evidence that a fact finding jury could be convinced that the plaintiff's employment termination, more than a year after the plaintiff's court appearance preparing to testify against a councilman, "was retaliatory".

It is necessary to mention that at no point, before or during the last seasonal grading period, did anyone from ETS indicate that Jones' employment would be terminated and that was a reason they were not promoting persons to the SL position. All subsequent emails and notifications indicated that the seasonal grading period would recycle in March and end sometime in September, as it had

been for the past seven years.  It was only on the day of termination, on November 10, 2021, when Jones was notified by email that his employment contract with ETS was terminated.  However, Jones was not able to receive the employment termination email and subsequently act upon it, as the termination email was coincidentally sent (November 10, 2021) during the time Jones was in the hospital (November 7, 2021 through November 12, 2021).  This coincidence did not afford Jones an opportunity to apply to the new employer, and he was ultimately replaced and separated from continued employment with the new employer.  The same-day termination email shows a deviation from standard policy in which most companies give some prior notice that an employee's contract will terminate within two weeks or two months or that the contract is not going to be renewed at the end of the current term.

### C.    Jones' NJ-CEPA & NJ-LAD Claims Meet Pleading Requirements.

The New Jersey Conscientious Employee Protection Act ("NJ-CEPA"), N.J.S.A. §§ 34:19-1 – 34:19-14 makes it unlawful for employers to take adverse employment action against employees who disclose or object to certain actions that the employee reasonably believes are either illegal or in violation of public policy, including complaints regarding pay practices.  However, under NJ-CEPA, even an employee who complains erroneously is still protected from workplace retaliation so long as the employee can identify the specific terms of a statute, regulation, or clear

expression of public policy that they believed was being violated, and they prove that their belief of a violation was objectively reasonable.

NJ-CEPA explicitly references violations involving deception or misrepresentation to shareholders, investors, clients, patients, customers, employees, former employees, retirees or pensioners of the employer, or any governmental entity. A critical part of NJ-CEPA is the written notice requirement. In order for there to be protection against retaliatory action pertaining to disclosure to a public body, the employee must have brought the matter to the attention of a supervisor of the employee by written notice and provided the employer a reasonable opportunity to correct the activity, policy, or practice. However, disclosure shall not be required where the employee is reasonably certain that the activity, policy, or practice is known to one or more supervisors of the employer.

To state a claim under NJ-CEPA, a plaintiff must allege: (1) his reasonable belief that the defendant's conduct violated a law, rule, or regulation; (2) he participated in a whistle-blowing activity; (3) an adverse employment action occurred; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. *Figueroa v. City of Camden*, 580 F. Supp. 2d 390 (D.N.J. 2008); *See also Dzwonar v. McDevitt*, 177 N.J. 451, 462 (2003). It follows: (1) Jones had reasonable belief that ETS violated the New Jersey Law Against Discrimination ("NJ-LAD") §§ N.J.S.A. 10:5-1 et seq. and that his exclusion from the SL position was due to racial discrimination. In addition Jones reasonably

-34-

believed that ETS violated a policy that requires employees to post job openings internally and/or externally; (2) Jones participated in a whistle-blowing activity through his email complaints to the director about his exclusion from a higher position and why that particular position was never posted internally or externally; (3) an adverse action occurred, subsequent to the whistle-blowing activity, in that Jones was terminated eight months later; (4) and a casual connection existed between Jones' whistle-blowing activity and his subsequent termination due to the fact ETS' response, that automated processes had replaced the need for hiring new SLs and ETS' aversion from answering why no SL openings had ever been posted, contradicts the fact that some employees were promoted to the SL position from the Rater position and new persons were hired directly to the SL position.  Jones claims that the director's responses were simply pretexts for discrimination.

Secondly, the "undisclosed list" of supposed terminated employees coupled with the timing of the email terminating Jones' employment while he was in the hospital, not affording him the opportunity to apply to the replacement employer, is suggestive of retaliation, which is prohibited under NJ-CEPA.

NJ-CEPA, like the NJ-LAD is a civil rights statute. *Abbamont v. Piscataway Twp. Board of Educ.*, 138 N.J. 405 (1994).  It is remedial legislation and therefore "should be construed liberally to effectuate its important social goal."  Because both NJ-CEPA and the NJ-LAD seek to eliminate "vindictive employment practices", the Court in *Abbamont v. Piscataway Twp. Board of Educ.* held that standards for

imposing liability against private employers, *See Lehmann v. Toys 'R' Us, Inc.*, 132 N.J. 587 (1993), should also be applied under NJ-CEPA as providing the "'most effective intervention and prevention' of retaliatory actions against employees." *Abbamont v. Piscataway Twp. Board of Educ.* (citing *Lehmann v. Toys 'R' Us, Inc.*). Consistent with the approach in *Abbamont v. Piscataway Twp. Board of Educ.*, the district court, applying New Jersey law, held that the framework from *McDonnell-Douglas Corp. v. Green* applied in a retaliatory discharge case under NJ-CEPA is similar to that applied in a violation of anti-discrimination statutes (the motion considered was one for summary judgment). *See Bowles v. City of Camden*, 993 F. Supp. 255 (D.N.J. 1998).

In deciding whether a plaintiff has sufficiently identified a source of law or public policy that relates to the "complained-of" conduct, a trial court must consider that, "[a] plaintiff who brings a claim pursuant to [NJ-CEPA] need not show that his or her employer or another employee "actually" violated the law or a clear mandate of public policy." *Dzwonar v. McDevitt.* "Instead, the plaintiff simply must show that he or she 'reasonably believes' that to be the case.'". "[W]hen a plaintiff brings an action pursuant to [NJ-CEPA], the trial court must identify a statute, regulation, rule, or public policy that closely relates to the complained-of conduct." However, a plaintiff does not have to "allege facts that, if true, actually would violate that statute, rule, or public policy." That is because "[t]he legislature intended CEPA to 'encourage, not thwart, legitimate employee complaints.'".

**-36-**

Indeed, "[t]he goal of CEPA … is 'not to make lawyers out of conscientious employees but rather to prevent retaliation against those employees who object to employer conduct that they reasonably believe to be unlawful or indisputably dangerous to the public health, safety, or welfare.'".

"Retaliatory action" under NJ-CEPA "means the discharge, suspension, or demotion of an employee, or other adverse employment action taken against an employee…" N.J.S.A. 34:19-2e.  To satisfy the requirement of establishing a causal nexus between the plaintiff's whistle-blowing activities and the adverse employment action(s), a plaintiff must establish that his/her protected disclosures and objections were the impetus of the retaliatory acts.  This means the plaintiff must show that the defendant employer intentionally retaliated against him/her because of his/her whistle-blowing activities.  The plaintiff may prove this circumstantially or directly, by establishing that: (1) a retaliatory reason more likely than not motivated defendant's action; or (2) defendant's stated reason for the adverse employment action was pre-textual and not the real reason for its action. *See Fuentes v. Perskie*; *Estate of Roach v. Trw, Inc.*, 164 N.J. 598 (2000) (holding that in "[e]xamining whether a retaliatory motive existed, jurors may infer a causal connection based on the surrounding circumstances").

Lastly, the New Jersey Law Against Discrimination ("NJ-LAD") §§ N.J.S.A. 10:5-1 et seq. is New Jersey's general anti-discrimination law.  Included in the NJ-LAD is an anti-retaliation provision which protects employees who are

subjected to retaliatory conduct by their employer for opposing acts of discrimination in the workplace. An employee who believes his or her employer has discriminated against their employees with regard to their compensation because of an employee's sex, age, race, national origin, religion, and/or other protected characteristics cannot be retaliated against for opposing unlawful practices.

Under NJ-LAD, N.J.S.A. 10:5-12 - *Unlawful Employment Practices and Discrimination*:

It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:

For an employer, because of the race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation.

N.J.S.A. 10:5-12 (t) further reads:

For an employer to pay any of its employees who is a member of a protected class at a rate of compensation, including benefits, which is less than the rate paid by the employer to employees who are not members of the protected class for substantially similar work, when viewed as a composite of skill, effort and responsibility.

Under NJ-LAD, an employee may file a civil lawsuit against the employer within two years of the retaliatory action against the employee. In the Operative Complaint, Jones alleged that employees of ETS, who were not part of his protected

class, received higher compensation for the same or similar work and job position. In addition, Jones claimed that NJ-LAD served as the policy, regulation, or law that Jones believed was violated under NJ-CEPA.

In *Battaglia v. United Parcel Service, Inc.*, 214 N.J. 518 (2013), the Supreme Court of New Jersey reversed an appellate court's decision to the extent that the appellate court dismissed the NJ-LAD claim and affirmed the NJ-CEPA verdict. Under the NJ-LAD, an employee who voices complaints and suffers a retaliatory employment action need only demonstrate a good-faith belief that the complained-of conduct violates the NJ-LAD. An identifiable victim of actual discrimination is not required.

## IV.   ETS' Remaining Arguments Are Unresolved On Merits.

Jones requests that this Court resolve the merits of ETS' remaining arguments from the District Court's *Opinion* (A182) (footnote 11). In particular, ETS argued that Jones' Section 1981 and Title VI claims were time-barred due to statute of limitations failures. ETS attempted this last gasp argument for the first time in its *Motion to Dismiss Plaintiff's Second Amended Complaint* (A90-A93). Jones rebuts ETS' argument in his *Response* (A116, A125-A127, A132-A133) on the grounds that Section 1981 has no express statute of limitations; the "catch all" statute of limitations of 4 years is affixed to it (*See 28 U.S.C. § 1658*). Secondly, Title VI borrows the most analogous state law for personal injury (*See N.J.S.A. § 2A:14-2*), which for New Jersey, is two years. These facts are fatal to ETS'

argument of statute of limitations failures, due to Jones filing his lawsuit on September 11, 2023, within two years of the last discriminatory action, which was a retaliatory termination on November 10, 2021.

Lastly, unresolved issues on the merits could allow the District Court to grant another dismissal based on completely different grounds without further argument from ETS. This delays litigation and prejudices Jones, an unrepresented party proceeding *in forma pauperis*, possibly through another appeal when this Court has both parties' arguments directly in front of them for this appeal.

## V.     THE DISTRICT COURT ERRED BY FAILING TO CONSIDER MITIGATING CIRCUMSTANCES THAT COULD GIVE RISE TO TOLLING THE TIME TO FILE A CHARGE FOR JONES' TITLE VII, ADEA, & ADA CLAIMS.

In *Schmidt v. Skolas*, supra, the Third Circuit held that the statute of limitations, as a Fed. R. Civ. P. – Rule 12(b)(6) ground for dismissal of Schmidt's claims, with respect to the sale of an asset, was not appropriate at the motion to dismiss stage because the date of sale could not be determined. It is necessary to reiterate and emphasize that Jones was terminated from employment with ETS through an email that included an "undisclosed list" of supposed terminated employees. The significance of an undisclosed list is that it obscures Jones' ability to further determine the specific types of discrimination towards protected traits and if there were any other employees terminated at all. As Jones alleged in his

Operative Complaint, he believes his employment termination was retaliatory in nature and may or may not include other employees (A47).  The mere existence of an undisclosed list of supposed terminated employees raises issues of possible discrimination that can only be learned in discovery, and therefore, claims directly impugning the undisclosed list cannot be dismissed before the list is unearthed.

Furthermore Jones posits that his Title VII, ADEA, and ADA claims of discrimination cannot be time barred, as they relate to filing a charge with their respective administrative agency.  This notion is supported because his ability to compare employee treatment has been both intentionally and unintentionally obscured.  The intentional obscurity has been established as the undisclosed list.  The unintentional obscurity is due to the fact that all work was conducted online, and Jones did not have the ability to compare similarly situated terminated employees and make a definitive discrimination claim.  Fed. R. Civ. P. – Rule 8(d)(2)) states:

> A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

Jones' claims are indeed both hypothetical and plausible because, again, the relevant persons and material have been obscured from him.  It is ETS' intentional obscuring of supposed terminated employees, via an undisclosed list, that should

have halted the District Court's decision to dismiss Jones' Title VII, ADEA, and ADA claims. How can a person file a charge with any administrative agency, when the essence of a discrimination claim is based on comparisons, but those possible comparisons are obscured by an undisclosed list? It is in the federal courts where multiple claims can be set out alternatively and hypothetically. As previously mentioned, Fed. R. Civ. P. – Rule 8(d)(2) supports this concept.

Because Jones claimed discrimination and retaliation and the aforementioned list blinds Jones from comparing supposed terminated employees with his own termination, the list should be open to discovery, if requested.

## VI.   THE DISTRICT COURT FAILED TO RECOGNIZE THE PUBLIC IMPORTANCE OF JONES' 18 U.S.C. § 3006A et seq. CLAIM.

On July 29, 2024, Jones filed a *Notice of Constitutional Challenge*, challenging federal statute 18 U.S.C. § 3006A et seq. – *Adequate Representation of Defendants*. Jones appropriately raised the issue in his original *Complaint*. On September 13, 2024, the District Court summarily dismissed Jones' 18 U.S.C. § 3006A et seq. claim for lack of standing. The Court further suggested that Jones was seeking an advisory opinion on the funding of the aforementioned statute (A9) (footnote 1). As Jones understands, the federal courts are prohibited from issuing advisory opinions, under Article III – "Cases and Controversies" provision of the *U.S. Constitution*. Furthermore, Jones was never seeking an advisory opinion, and nowhere in any of Jones' complaints or in the record does Jones request an advisory

opinion.  However, Jones was and is seeking a declarative judgment regarding the unconstitutionality of the aforementioned statute.  Specifically, Jones claims that the statute, 18 U.S.C. § 3006A et seq. – *Adequate Representation of Defendants*, creates a financial conflict of interest between the public defender and the prosecutor.  This financial conflict of interest exists because both the public defender and the prosecutor are funded by the same entity, the federal government.

### A.   Unconstitutionality of 18 U.S.C. § 3006A et seq.

The constitutional question raised in the original *Complaint* and in the *Notice of Constitutional Challenge* is the following: Does the federal statute 18 U.S.C. § 3006A et seq. violate the due process clause of the 5th Amendment or the 14th Amendment of the *U.S. Constitution*?  Jones believes it violates the due process clause of the 5th Amendment because of the aforementioned financial conflict of interest between the public defender and the prosecutor.  A person should not be simultaneously criminally prosecuted and defended by the same entity.  This is not in the best interest of justice.

### B.   Standing Exception: Third-Party Standing (*Jus Tertii*).

The aforementioned inherent financial conflict of interest is a legal error of such economic nature that it will likely continue to recur, but it will likely never be addressed because of two hindrances: financial/economic hardship of unrepresented parties; and the unlikelihood of a public defender raising the issue invalidating his/her own office.  The evidence this issue will repeat is apparent in that this

-43-

conflict of interest was enacted in 1964 as a part of the Criminal Justice Act of 1964, yet it still exists (*See Gideon v. Wainwright*, 372 U.S. 335 (1963)). The financial/economic hardship aspect stems from the fact that typical federal defendants, who must utilize a public defender, do not have the finances, resources, education, or legal knowledge to challenge the statute. Practically speaking, a person utilizing a public defender is not likely to understand the relevance and implication to their own case of challenging the constitutionality of the aforementioned statute. Even if that person does understand the relevance of challenging the statute, if that person is subsequently convicted, any challenge to the statute is likely barred, pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994) which essentially bars any convicted person from filing suit, such that a favorable ruling would undermine the conviction. Also, it is "highly unlikely" that the actual public defender would challenge the constitutionality of his/her own office, further entrenching the issue's likelihood of recurrence. These facts severely limit who would even have an opportunity at challenging the statute

Jones asserts third-party standing exception on behalf of unrepresented parties for this claim and requests this Court give a declaratory judgment in relation to a challenge to the statute's constitutionality. The third-party standing (also known as *jus tertii*) exception allows a litigant to assert the constitutional rights of someone else who is not a party to the lawsuit. *See Barrows v. Jackson*, 346 U.S. 249 (1953); *Powers v. Ohio*, 499 U.S. 400 (1991); *Kowalski v. Tesmer*, 543

-44-

U.S. 125 (2004). To qualify for this exception, the U.S. Supreme Court generally requires a three-part test: (1) the litigant must have suffered their own concrete injury; (2) there must be a close relationship between the litigant and the third party; (3) and the third party must face a genuine obstacle or hindrance to protecting their own interests in court. It is prudent to mention that none of the aforementioned case law perfectly adheres to the three-pronged test to grant third-party standing exception; however, in the first two cases, the standing exception was granted despite highly questionable justifications.

In *Barrows v. Jackson,* Jackson, a Caucasian woman asserted the rights of non-Caucasian (African-American) "potential" buyers, under the 14th Amendment's *Equal Protection* clause as a defendant, after her Caucasian neighbors sued her for breaking a neighborhood-agreement not to sell homes in their neighborhood to non-Caucasian persons, devaluing their homes. Even though an African-American person ultimately bought Jackson's home, and in turn, she sold her home with no laws being violated, the U.S. Supreme Court somehow granted her a third-party standing exception to assert the rights of the very persons her agreement sought to discriminate against. Furthermore, Jackson was not really even asserting the rights of "potential" African-American buyers; she was asserting the rights of "hypothetical" African-American buyers of "someone else's" property because again, her home was bought and sold with no issue, so she no longer had a property that was subject to the discriminatory agreement she voluntarily signed. To Jones' eye,

Jackson only meets the first requirement of the three-prong test, and that is she incurred an injury of imminent monetary damages in the lawsuit initiated by her neighbors. However, her close-relationship is hypothetical, for the reasons previously stated, and there really is no true hindrance to a third-party, an African-American or any non-Caucasian from filing a lawsuit. One might consider the era in which African-Americans were living in, pre-Civil Rights' Movement, a hindrance, but that is not the type of hindrance the courts are referring to when they require an obstacle or hindrance as part of the three-prong test. The Court stated, "the reasons which underlie our rule denying standing to raise another's rights, which is only a rule of practice, are outweighed by the need to protect the fundamental rights which would be denied". The standing granted to Jackson appears to be less than Jones asserting the rights of unrepresented parties for the aforementioned claim of unconstitutionality of 18 U.S.C. § 3006A et seq.

In *Powers v. Ohio*, a convicted Caucasian man asserted the rights of excluded African-Americans from the jury pool. Here, Powers does in fact, suffer an injury of a right to fair trial, and he also has an actual close-relationship to the jurors in the legal sense that he has the right to choose a jury of his peers. However, there is no obstacle or hindrance from the excluded jurors from filing suit.

Lastly, in *Kowalski v. Tesmer*, two attorneys and three indigent defendants, who previously pled guilty, filed suit challenging a Michigan state law that denied appellate counsel to defendants who previously pled guilty. They argued this state

**-46-**

law violated the defendants' right to counsel guaranteed in the *U.S. Constitution*. Here, the U.S. Supreme Court said that the attorneys did in fact, suffer an injury. Curiously, the Court agreed that the law blocked the attorneys from being appointed to indigent defendants, resulting in loss of income (*That is a bit of a stretch*).  However, the Court said the attorneys did not have a close-relationship because these attorneys did not represent any of the defendants during their state trial and therefore their relationship was mostly hypothetical and not actual.  The Court also curiously said that the defendants had no obstacle or hindrance from filing suit on their own behalf.  The Court even pointed to a singular case in which an indigent defendant did file suit, challenging that very law.  The part of this case Jones would like to focus on is the simple fact that indigent defendants, not only lack the proper education and legal knowledge to navigate the court system, but the one advocate the *Constitution* guarantees them to have, the public defender, is not truly their advocate because of their in-common financial funding with the prosecutor.  This makes the likelihood of challenging the statute miniscule, and the possibility of competently challenging the statute nearly impossible.

Lastly, anyone that has had to utilize a public defender intuitively knows that the public defender does not typically defend their client to the best of their ability.  This is directly due to the fact that the public defender is financially sourced from the same entity the prosecutor is sourced, indicating that the two could never be natural adversaries.  The U.S. Supreme Court's declaration that

third-party standing rules are "practice, not jurisdictional" signifies that while Article III requires a concrete "case or controversy," the prudential rule against raising others' rights is a self-imposed judicial limitation that can be relaxed when necessary.  Cases like *Barrows v. Jackson* and *Powers v. Ohio* emphasize that when the underlying purposes of the rule (fairness, judicial restraint) are outweighed by the need to protect constitutional rights, the Court may allow exceptions.  For this specific claim, the equities favor the appeal due to the immense public impact.

### C.      Solution to Conflict of Interest of 18 U.S.C. § 3006A et seq.

The basic concept to Jones' solution to the conflict of interest with the aforementioned statute is that the public defender should be sourced from "large" law firms that are "required" to do pro bono work on behalf of the division of the district court they are registered in (e.g. Camden, Newark, and Trenton).  Law firms would be monetarily compensated for taking on a case and monetarily incentivized if they win a publicly defended case.  The redeeming quality about this solution is that the federal government no longer has to pay public defender salaries.  Instead, the federal government would only have to pay out a fraction of a typical public defender's salary, and that would only be in the few cases the public defender wins, saving the federal government potentially millions of dollars per year.

The impact, in regard to the question of constitutionality of statute 18 U.S.C. § 3006A et seq., is of such public importance that denying review now ensures the public will never receive a definitive ruling on a recurring harm.

-48-

## CONCLUSION

For the reasons stated above, Jones requests that this Court reverse the District Court's *Order*, reject ETS' remaining arguments, and remand with instructions to enter an order denying ETS' *Motion to Dismiss* in its entirety, as all grounds raised by ETS fail as a matter of law. This will negate needless remand, and it will promote judicial economy and efficiency.

Lastly, Jones requests this Court remand with instructions to set an appropriate deadline for ETS to submit an *Answer* to the Operative Complaint and to establish a schedule for discovery and trial.

Yours Truly,

_Solomon A. Jones_
(Sign your name)

**Solomon A. Jones**
(Print your name)

(229)234-9383
(Your Telephone Number)

soljones360@gmail.com
(Your e-mail address)

# <u>APPENDIX LISTING</u>

Appendix (Volume I)

*Appendix: District of New Jersey (Trenton)*

Exhibit (Page A1):          Number of Pages:   7
Exhibit Description:        <u>Notice of Constitutional Challenge</u>
                            [Monday, July 29, 2024]


Exhibit (Page A8):          Number of Pages:   11
Exhibit Description:        <u>Court's Opinion (*original Complaint*)</u>
                            [Friday, September 13, 2024]


Exhibit (Page A19):         Number of Pages:   2
Exhibit Description:        <u>Court's Order (*original Complaint*)</u>
                            [Friday, September 13, 2024]


Exhibit (Page A21):         Number of Pages:   14
Exhibit Description:        <u>Court's Opinion (*Amended Complaint*)</u>
                            [Friday, May30, 2025]


Exhibit (Page A35):         Number of Pages:   1
Exhibit Description:        <u>Court's Order (*Amended Complaint*)</u>
                            [Friday, May30, 2025]


Exhibit (Page A36):         Number of Pages:   17
Exhibit Description:        <u>2nd Amended Complaint (O*perative Complaint*)</u>
                            [Thursday, June 12, 2025]


Exhibit (Page A53):         Number of Pages:   5
Exhibit Description:        <u>USAspending.gov – ETS Funding Chart</u>
                            <u>(Parent Recipient)</u>


Exhibit (Page A58):         Number of Pages:   5
Exhibit Description:        <u>USAspending.gov – ETS Funding Chart</u>
                            <u>(Child Recipient)</u>
                            (*Figures Referenced in 2nd Amended Complaint*)


Exhibit (Page A63):         Number of Pages:   9
Exhibit Description:        <u>USAspending.gov – ETS Employment Contract</u>
                            (*PIID: EDIES13C0017*)

# APPENDIX LISTING (CONT.)

Appendix (Volume I)

Exhibit (Page A72):           Number of Pages:   2
Exhibit Description:          Defendants' MTD 2nd Amended Complaint
                              (Attachment: Brief in Support [34])
                              [Thursday, July 10, 2025]

Exhibit (Page A108):          Number of Pages:   43
Exhibit Description:          Plaintiff's Response Opposing MTD
                              [Tuesday, July 15, 2025]

Exhibit (Page A151):          Number of Pages:   19
Exhibit Description:          Defendants' Reply Brief in Support of MTD
                              [Monday, July, 28, 2025]

Exhibit (Page A170):          Number of Pages:   13
Exhibit Description:          Court's Opinion (2nd Amended Complaint)
                              [Tuesday, February 3, 2026]

Exhibit (Page A183):          Number of Pages:   1
Exhibit Description:          Court's Order (2nd Amended Complaint)
                              [Tuesday, February 3, 2026]

Exhibit (Page A184):          Number of Pages:   2
Exhibit Description:          Plaintiff's Notice of Appeal
                              [Wednesday, February 18, 2026]

Exhibit (Page A186):          Number of Pages:   7
Exhibit Description:          District Court Docket (as of 2/20/26)
                              [Wednesday, February 18, 2026]

This appendix meets the all of the requirements of 3rd Circuit. L.A.R. – Rule 30.

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This document complies with the type-volume limit of 3d Cir. L.A.R. – Rule 31.1(c) and the word limit of 3d Cir. L.A.R. – Rule 31.1(c) because, excluding the parts of the document exempted by Fed. R. App. P. 32 (f):

    $\boxed{X}$    this document contains **12,254** words, **or**

    $\square$    this brief uses a monospace typeface and contains [***state the number of***] lines of text.

2.  The is document complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and the typestyle requirements of Fed. R. App. P. 32 (a)(6) because:

    $\boxed{X}$    this document has been prepared in a proportionally spaced typeface using **Microsoft Word 2007** in **Century School** font and **12** font-size.

    $\square$    this document has been prepared in a monospace typeface using [***state name and version of word-processing program***] with [***state number of characters per inch and name of typestyle***].

3.  No paper copies were submitted.  The paper copies requirement was waived.

4.  This document complies with the virus scan requirement of 3d Cir. L.A.R. – Rule 31.1(c).  A virus detection program has been performed on this electronic file and no virus was detected.  The software used to scan this file was Avast One, Version 25.22.0.

s/ Solomon A. Jones

April 1, 2026

# UNITED STATES COURT OF APPEALS
### for the
## THIRD CIRCUIT

| | |
|---|---|
| **SOLOMON A. JONES,** | ) |
| Plaintiff– Appellant, | ) **CASE** |
| | ) **NO.: 26-1362** |
| | ) |
| **v.** | ) |
| | ) **CIVIL ACTION** |
| | ) **NO.: 3:23-cv-20326-MAS-RLS** |
| **EDUCATIONAL TESTING SERVICE,** | ) |
| Defendant–Appellee. | ) |
| | ) |
| _____ | ) |

## <u>CERTIFICATE OF SERVICE</u>

I, Solomon A. Jones, hereby certify that on this **1st** day of **April 2026**, the counsel for the

opposing party, Educational Testing Service, Vincent N. Avallone and Scott G. Kobil, were

served a true and correct copy of the **Principal Brief of Appellant** via the Court's electronic

filing system - CM/ECF, pursuant to Federal Rules of Appellate Procedure – Rule

25(a)(2)(B)(ii).

| | |
|---|---|
| **Counsel for Defendant** | **Counsel for Defendant** |
| **Educational Testing Service** | **Educational Testing Service** |
| Vincent N. Avallone - Attorney | Scott G. Kobil - Attorney |
| vincent.avallone@klgates.com | scott.kobil@klgates.com |
| **K&L Gates LLP** | **K&L Gates LLP** |
| One Newark Center, 10th Floor | One Newark Center, 10th Floor |
| Newark, New Jersey 07102 | Newark, New Jersey 07102 |
| P: (973) 848-4000 | P: (973) 848-4000 |
| F: (973) 848-4001 | F: (973) 848-4001 |

*Solomon A Jones*
_____
(Sign your name)

**Solomon A. Jones**
_____
(Print your name)

**(229)234-9383**
_____
(Your Telephone Number)

**soljones360@gmail.com**
_____
(Your e-mail address)